UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.S., | No. 1:25-cv-02016 DC SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| MINGA WOFFORD, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**BACKGROUND**

**I.      Factual Background**

Petitioner is a 53-year-old citizen of Mexico. ECF No. 2 at 7, ¶ 25. Petitioner first arrived in the U.S. in 1994 after fleeing violence, corruption, and poverty. He more recently entered the U.S. in 2001 without inspection and has remained since. Id. In all, he has lived in the U.S. for approximately 33 years. Id. at 10, ¶ 43. Petitioner and his wife, a lawful permanent resident, have been married for approximately 28 years. Id. at 10, ¶ 44. Together they have four children. Id. The two youngest are minors who live with Petitioner and his wife. Because Petitioner's wife works only part-time, the minor children are totally dependent on Petitioner. Id. The two older

1

children live independently but receive assistance form Petitioner on an as-needed basis.  Id.

On October 28, 2025, Petitioner was arrested after a domestic dispute and released shortly after.  ECF No. 2 at 11, ¶ 47.  On October 30, 2025, Petitioner appeared in Sacramento County Superior Court regarding the domestic dispute.  The Sacramento DA declined to prosecute.  Id. ¶ 48.  On November 7, 2025, while Petitioner was driving to work, ICE agents surrounded his vehicle and arrested him without notice.  Id. ¶ 49.  Respondents briefly detained Petitioner at the Sacramento local ICE office before transferring him to the Mesa Verde ICE Processing Center in Bakersfield, where he has remained since.  Id.

Respondents issued a notice to appear ("NTA") charging Petitioner with removal under INA § 212(a)(6)(A)(i): "[Y]ou are an alien present in the United States without being admitted or paroled, or who arrived in the United States any time or place other than as designated by the Attorney General."  ECF No. 2-1 at 1.  On December 3, 2025, Petitioner filed a motion for release on bond determination.  Id. at 2, ¶ 4.  An Immigration Judge denied Petitioner's motion the same day for lack of jurisdiction pursuant to Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Yajure Hurtado").[1]  ECF No. 2 at 11, ¶ 50; id. at 11, ¶ 51; ECF No. 2-2.  On December 8, 2025, Petitioner filed a motion to reconsider the denial of the motion for release on bond and argued the court should follow Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS BRFM (C.D. Cal.) ("Maldonado Bautista").  An IJ denied the motion to reconsider the same day, writing that the motion "does not specify errors of law or fact in the previous order or is not supported by pertinent authority" and citing INA § 240(c)(6)(C) and 8 C.F.R. § 1003.23(b)(2).  ECF No. 2 at 2-3, ¶ 6; id. at 11, ¶ 52; ECF No. 2-3 at 1.  The BIA's decision in Yajure Hurtado is consistent with a DHS policy directive issued on July 8, 2025, Interim Guidance Regarding Detention Authority for Applicants for Admission (the "Interim Guidance"), that makes release on bond unavailable for undocumented individuals like petitioner.  ECF No. 2 at 18, ¶ 84.

---

[1]  In Yajure Hurtado, the BIA affirmed an Immigration Judge's conclusion that he lacked authority to hear a noncitizen's request for bonding, explaining that "[noncitizens] who . . . surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer."  Yajure Hurtado, 29 I. & N. Dec. 216, 228 (BIA 2025).

2

Petitioner has a "confidential application" pending with USCIS. ECF No. 2 at 10-11, ¶ 45. Petitioner also alleges he is statutorily eligible for cancellation of removal ("COR") because he had lived in the U.S. for more than ten years when served the NTA, has no crimes that would make him inadmissible to the U.S., has good moral character, and his removal from the U.S. will cause exceptional and extremely unusual hardship to his wife and two minor children. Id. at 3, ¶ 7. The due date for completing his COR filings is February 4, 2026, and the final immigration court hearing on his application for COR will likely be scheduled for the end of March or beginning of April 2026. Id. at 9-10, ¶ 39.

**II.      Procedural Background**

Petitioner filed the operative first amended petition for writ of habeas corpus on December 26, 2025. ECF No. 2. The Petition raises four causes of action: (1) Violation of Fifth Amendment (Substantive Due Process); (2) Violation of the Fifth Amendment (Procedural Due Process); (3) Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A); and (4) Violation of the INA (Request for Relief Pursuant to Maldonado Bautista). ECF No. 2 at 16-19. By way of relief, Petitioner asks the court to issue a Writ of Habeas Corpus ordering Respondents to immediately release him from DHS custody unless and until DHS proves to a neutral adjudicator by clear and convincing evidence that Petitioner is a danger or flight risk. Id. at 19. Alternatively, Petitioner seeks an Order requiring Respondents to provide a bond and custody redetermination hearing within 7 days where DHS bears the burden of justifying Petitioner's continued detention by clear and convincing evidence and the Court takes into consideration alternatives to detention and Petitioner's ability to pay a bond. Id. In addition, Petitioner requests an order declaring the "refusal to allow Petitioner a meaningful bond and custody redetermination hearing violates the INA, APA, and the Due Process Clause of the Fifth Amendment." Id.

On December 31, 2025, the undersigned issued an order directing Respondents to show cause by January 8, 2026, why (1) this case is factually or legally distinguishable from the decisions in Labrador-Prato v. Noem, No. 1:25-cv-1598 DC SCR (HC), 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025) ("Labrador-Prado"), and Tinoco v. Noem, No. 1:25-CV-1762 DC JDP (HC), 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025) ("Tinoco"); and (2) Petitioner is not entitled to relief

3

as a member of the certified class action in Maldonado Bautista.  ECF No. 4.  The order further instructed Respondents that their return "may include any and all transcripts or other documents relevant to the determination of the issues presented in the habeas application."  Id.

Respondents filed their Response on January 8, 2026, which is styled as both a Response and a Motion to Dismiss Petition For Writ of Habeas Corpus Under 28 U.S.C. § 2254 And Rule 4.  ECF No. 6.  Respondents concede that Labrador-Prado and Tinoco "are not distinguishable on material factual or procedural grounds from the present case."  Id. at 1.  Regarding the order to show cause's second request, Respondents acknowledge Maldonado Bautista but do not address whether the Petitioner is entitled to relief as a member of the certified class action:

> The government acknowledges two district courts within the Ninth Circuit have recently vacated or stayed the Department of Homeland Security's July 8, 2025 "Interim Guidance Regarding Detention Authority for Applicants for Admission" -- which takes the position that all applicants for admission within the meaning of 8 U.S.C. 1225(a) are subject to mandatory detention under 8 U.S.C. 1225(b) -- as contrary to law under the Administrative Procedures Act.  See Maldonado Bautista v. Noem, No. 5:25-cv-01873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (vacating the guidance); Garro Pinchi v. Noem, No. 25-cv-05632, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025) (staying the guidance within ICE's San Francisco area of responsibility, an area that includes the Eastern District of California, pending final resolution of the APA claim). The government has appealed the Maldonado Bautista judgment to the Ninth Circuit, see Maldonado Bautista v. DHS, 9th Cir. No. 25-7958, but neither the district court nor the Ninth Circuit has issued a stay of the district court's order.

Id.  Nonetheless, Respondents urge the court to deny the petition for habeas corpus "because there is no such liberty interest, and petitioner's detention is mandated by statute [8 U.S.C. § 1225(b)(2)]."  Id. at 2.  Respondents did not submit any transcripts or other documents relevant to the determination of the issues presented in the petition.  As an alternative to denying the petition, Respondents ask that any further briefing deadlines be held in abeyance until the resolution of Rodriguez v. Bostock, 779 F.Supp.3d 1239 (W.D. Wash. 2025), Ninth Circuit Docket No. 25-6842, which they claim involves issues that are likely to be dispositive in this case.

Petitioner filed a response on January 12, 2026, arguing that Respondents' interpretation of 8 U.S.C. § 1225(b)(2) is inconsistent with the statutory and the majority of recent decisions by district courts within the Ninth Circuit.  ECF No. 7 at 2-3.  Petitioner also addresses the petition's due process claims and asserts that, like the petitioners in Labrador-Prado and Tinoco, he has an

4

established liberty interest.  Id. 3-4.  Petitioner further argues that Respondents do not address the Mathews v. Eldridge, 424 U.S. 319 (1976) factors, which favor his release.  Id. at 4-5.

**DISCUSSION**

### I.    Jurisdiction

The federal habeas statute confers subject matter jurisdiction over challenges to any individual's confinement "in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  This case presents both statutory and constitutional challenges to petitioner's ongoing immigration detention.  This court has jurisdiction.

### II.    Applicable Statute

The statutory and regulatory framework governing immigration detention can charitably be described as complex.  "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Respondents acknowledge this case is neither legally or factually distinguishable from Labrador-Prado or Tinoco yet insist Petitioner's detention is mandated by 8 U.S.C. § 1225(b)(2). District Judge Coggins discussed the relevant statutory framework at length in both cases and determined the discretionary detention provisions at § 1226(a), not § 1225(b)(2), governed.  As Judge Coggins explained in Labrador-Prado:

> Section 1226 provides a discretionary detention scheme while removal proceedings are pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release him on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is apprehended under section 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained under section 1226(a), he is entitled to a bond hearing. Jennings v. Rodriguez, 583 U.S. 281, 306 (2018).
>
> As to noncitizens seeking admission into the United States, section 1225 provides for mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. § 1225; see also Ortiz Donis, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already present in the United States,' U.S. immigration law also 'authorizes the Government to detain certain aliens seeking admission

into the country under §§ 1225(b)(1) and (b)(2),' a process that provides for expedited removal.") (citing Jennings, 583 U.S. at 303.)

[....]

Until this year, the United States Department of Homeland Security ("DHS") has "applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). According to Petitioner, on July 8, 2025, DHS issued a memo to all employees of ICE stating that it had revisited its legal position on detention and release authorities and that section 1225 "is the applicable immigration detention authority for all applicants for admission." (Doc. No. 1 at ¶ 37.) Following this development, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to section 1225(b)(2). Garcia v. Noem, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); Salcedo Aceros, 2025 WL 2637503, at *4.

In their opposition, Respondents reiterate the government's position that section 1225 applies broadly to all noncitizens, including Petitioner, who are "present in the United States who ha[ve] not been admitted." (Doc. No. 11 at 3) (quoting Ramos v. Lyons, No. 25-cv-09785-SVW-AJR, 2025 WL 3199872, at *4 (C.D. Cal. Nov. 12, 2025)). However, the legal arguments Respondents rely upon to support the government's position that section 1225 applies here have been consistently rejected by a majority of courts in this district and courts across the country. See Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sep. 26, 2025) (citing Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases). Instead, those courts have generally held that section 1226 rather than section 1225 is the appropriate section to apply in cases in which a noncitizen is already living in the United States. See C.A.R.V. v. Wofford, No. 25-cv-01395-JLT-SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 1, 2025) (finding section 1226 applied when "petitioner ha[d] been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes"); see Bernardo Aquino v. Larose, No. 25-cv-02904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) ("The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen ... who has resided in the United States for many years.") (citing cases).

Labrador-Prato, 2025 WL 3458802, at *3–4. Judge Coggins ultimately adopted the majority view "reject[ing] the government's new interpretation of section 1225 as the applicable immigration detention authority for all inadmissible noncitizens," and determined that the petitioner, who had resided in the United States for almost four years at the time of her detention, "is likely subject to the discretionary detention scheme set forth in section 1226." Id. at *4.

The undersigned follows Labrador-Prato and the majority view in finding that the applicable statute governing Petitioner's detention is § 1226(a), not § 1225(b)(2). Like the

6

petitioners in <u>Labrador-Prado</u> and <u>Tinoco</u>, Petitioner has resided in the United States for many years prior to his detention—in his case, continuously since 2001.  Having determined that Petitioner is subject to the discretionary detention scheme in § 1226(a), the undersigned proceeds to address Petitioner's substantive claims.

### III.     Violation of the Immigration and Nationality Act

Petitioner asserts a claim for violation of the INA.  ECF No. 2 at 18 (Count Four).  While petitioner frames this claim in reference to <u>Maldonado Bautista</u>—a subject the Court addresses fully below—when reduced to its simplest form, this is simply a claim that Respondents lack statutory authority to detain petitioner without a bond hearing.  Section 1226(a) expressly authorizes release on bond and its authorizing regulations provide for immigration judges to convene bond hearings.  After arresting a noncitizen, the government "may continue to detain the arreste[e]" until a final removal decision is made or "may release" them on "bond" or "conditional parole."  8 U.S.C. § 1226(a)(1)–(2).  If a noncitizen wishes to contest the initial custody determination—i.e., the denial or amount of bond—the noncitizen has a right to do so before an immigration judge.  8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).  Accordingly, Respondents are violating the INA, as codified at 8 U.S.C. § 1226(a) by detaining petitioner without a bond hearing.  Habeas relief is warranted on this ground alone.

### IV.     Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

The undersigned also considers petitioner's claim under the Administrative Procedure Act ("APA"), both as an alternative ground for relief and to highlight Respondents' apparent position that they may ignore the judgments and rulings of other courts and force habeas petitioners to seek to vindicate their rights in this Court.  Petitioner's APA claim challenges the legality of the DHS Interim Guidance issued on July 8, 2025.  ECF No. 2 at 17-18 (Count Three).  Petitioner alleges that Respondents are bound by the partial summary judgment order in <u>Maldonado Bautista</u> that held the Interim Guidance contrary to the INA.  ECF No. 2 at 17-18, ¶ 83.  As a result, Petitioner is "not subject to Respondents' July 8, 2025, policy directive" and "the application of the July 8, 2025, policy to label Petitioner as 'seeking admission' despite over 20 years residing in the U.S. is unlawful, arbitrary, and capricious."  <u>Id.</u> at 18, ¶ 84.  Respondents

acknowledge the partial summary judgment order in Maldonado Bautista that vacated the Interim Guidance, as well as the fact that the order has not been stayed pending appeal to the Ninth Circuit, but do not otherwise address the substance of Petitioner's APA claim.  ECF No. 6 at 1.

The undersigned will briefly summarize the Maldonado Bautista proceedings before addressing the merits of Petitioner's APA claim.  The class action concerns a challenge to the legality of the aforementioned DHS Interim Guidance dated July 8, 2025:

> On July 8, 2025, the Department of Homeland Security (DHS) instituted a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." The Notice communicated DHS's choice, in coordination with the Department of Justice ("DOJ") to "revisit[ ] its legal position on detention and release authorities," determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all "applicants for admission." [Id.]. In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A). Under § 1225(b)(2)(A), "applicants for admission" are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a) and not entitled to the due process protections found within § 1226(a).

Maldonado Bautista v. Santacruz, No. 5:25-cv-1873-SSS-BFM, 2025 WL 3289861, at *1 (C.D. Cal. Nov. 20, 2025) (cleaned up).  As a result of the new DHS Policy, the Maldonado Bautista petitioners, like Petitioner here, were denied bond hearings and remained in detention.  Id. at *2.

On November 20, 2025, District Judge Sykes granted Petitioners' motion for partial summary judgment and declared the DHS Policy unlawful.  Id. at *5-11.  After an extensive review of the statutory language, Judge Sykes determined that the DHS policy "unacceptably collapse[s] § 1226 into nonexistence under a wide-reaching interpretation of 'applicants for admission.'"  Id. at *11.  On November 25, 2025, Judge Sykes granted Petitioner's motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2).  Maldonado Bautista v. Santacruz, No. 5:25-cv-1873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).  The certified, "Bond Eligible Class" was defined as:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

Id. at *9.  The class was certified "as to Petitioners' claims that the DHS Policy violates the INA

8

and Due Process." Id.

The Maldonado Bautista Petitioners subsequently filed an application for reconsideration and clarification of the November 25, 2025, order.  On December 18, 2025, Judge Sykes granted in part and denied in part the application, clarifying that the partial summary judgment order declared the July 8, 2025, policy unlawful and granted vacatur under the APA: "Because vacatur is a necessary consequence of declaring an agency action unlawful, vacatur of the DHS Policy is within the scope of the MSJ Order." Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM, 2025 WL 3713982, at *4 (C.D. Cal. Dec. 18, 2025).  Judge Sykes concurrently issued an Amended Consolidated Order that elaborated on the vacatur relief:

> Section 706(2)(A) of the APA commands a reviewing court to "hold unlawful *and set aside* agency action, findings, and conclusions" that are found to be "arbitrary, capricious, ... or otherwise not in accordance with law."  § 706(2)(A) (emphasis added). The only possible outcome following the Court's interpretive determination regarding the INA is vacatur under the APA.

Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM, 2025 WL 3713987, at *16 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

Returning to the instant petition, the undersigned finds that Petitioner is entitled to relief under the APA.  Petitioner is a member of the Maldonado Bautista "Bond Eligible" class and thus entitled to class-wide, declaratory relief regarding the illegality of the DHS Interim Guidance. Moreover, Judge Sykes' APA vacatur of the DHS Interim Guidance is universal and applies with equal force here.  Maldonado Bautista, 2025 WL 3713987, at *15–17 (rejecting argument that 8 U.S.C. § 1252(f)(1), which places limits on injunctive relief, prohibits nationwide vacatur of the DHS policy guidance); see also Nat'l TPS All. v. Noem, 773 F. Supp. 3d 807, 867 (N.D. Cal. 2025) (holding APA vacatur of DHS decisions concerning Venezuelan temporary protected status holders were "nationwide in scope" and distinguishing APA vacatur from nationwide injunctions), aff'd, 150 F.4th 1000 (9th Cir. 2025); Texas v. United States, 40 F.4th 205, 229 n.18 (9th Cir. 2022) ("reject[ing] DHS's contention that the nationwide vacatur is overbroad[;] [i]n the context of immigration law, broad relief is appropriate to ensure uniformity and consistent in enforcement").

Moreover, Maldonado Bautista is not the only APA ruling that covers petitioner's request for a bond hearing.  As respondents note, a judge in the Northern District of California ordered an APA stay of the policy guidance within the jurisdiction of the ICE San Francisco Field Office. See Garro Pinchi v. Noem, No. 25-cv-05632 PCP, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025). Because the ICE San Francisco Field Office exercises jurisdiction over the Mesa Verde Immigration Detention Center where petitioner is being held, that APA stay ruling also applies to petitioner.  Pursuant to the vacatur in Maldonado Bautista and the stay in Garro Pinchi, respondents cannot subject petitioner to the DHS policy guidance and, as a result, cannot deny him a bond hearing on the premise that he is properly detained under 8 U.S.C. § 1225(b).[2]

Respondents do not explain why they are not complying with the judgment vacating the Interim Guidance in Maldonado Bautista or the order staying the same in Garro Pinchi.  To the contrary, they acknowledge that neither the judgment in Maldonado Bautista nor the order in Garro Pinchi have been stayed on appeal.  ECF No. 6 at 2.  Nor can the undersigned imagine any lawful reason justifying such noncompliance.  Not only does this apparent noncompliance expose Respondents to the possibility of contempt proceedings, it also results in unnecessary individual habeas litigation in this District.

Petitioner is entitled to relief on the alternative APA grounds set out in County Three.

## V.      Constitutional Claims and the Scope of Habeas Relief

Petitioner also raises two Fifth Amendment due process claims—one asserting a violation of substantive due process (Count One) and the other a violation of procedural due process (Count Two).  However, because Petitioner's INA and APA claims provide adequate relief, the

---

[2]  The undersigned notes that Judge Sykes expressly declined to extend the APA vacatur relief to Yajure Hurtado.  Maldonado Bautista, 2025 WL 3713982, at *3.  Judge Sykes explained that the BIA issued Yajure Hurtado after the petitioners filed their class complaint, and the petitioners did amend the complaint to address that ruling.  Id.  However, Judge Sykes found that the "core holding" of Yajure Hurtado—i.e., subjecting noncitizens present in the United States without inspection to § 1225 and denying them bond hearings for lack of jurisdiction—"cannot be squared" with the partial summary-judgment order.  "Although the MSJ Order does not grant vacatur of Yajure Hurtado under the APA, Yajure Hurtado is no longer controlling; the legal conclusion underlying the decision is no longer tenable."  Id.

10

undersigned declines to adjudicate his constitutional claims.[3]  See Nw. Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 205 (2009) ("normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case[.]") (citations omitted).

The undersigned must next determine the scope of habeas relief.  Again, Petitioner seeks an order directing Respondents to "immediately release Petitioner from DHS custody unless and until DHS proves to a neutral adjudicator by clear and convincing evidence that Petitioner is a danger or flight risk," or, in the alternative, an order "requiring Respondents to provide a bond and custody redetermination hearing within 7 days where DHS bears the burden of justifying Petitioner's continued detention by clear and convincing evidence and the Court takes into consideration alternatives to detention and Petitioner's ability to pay a bond."  ECF No. 2 at 19.

In both Labrador-Prado and Tinoco, Judge Coggins ordered the petitioner's immediate release and set the parameters for any pre-deprivation bond hearing held pursuant to § 1226(a). But a key distinction between those cases and the present action is that the Labrador-Prado and Tinoco petitioners had been released on their own recognizance pursuant to § 1226(a) prior to the detention at issue in their respective habeas petitions.  Labrador-Prado, 2025 WL 3458802, at *4; Tinoco, 2025 WL 3567862, at *1.  Petitioner, on the other hand, entered the United States multiple times without inspection prior to his current detention.  See ECF No. 2 at 11, ¶ 46.

Considering § 1226(a)'s discretionary detention framework, as well as the absence of any prior release on bond pursuant to § 1226(a), the undersigned does not find immediate release to be an appropriate remedy.  See 8 U.S.C. § 1226(a)(1) (authorizing the Attorney General to arrest and detain noncitizens pending removal proceedings); Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (denying Petitioner's request for immediate release and explaining that "that the specific harm [petitioner] alleges—that he is unlawfully barred from

---

[3]  If constitutional analysis were necessary, there is no doubt that the Due Process Clause would independently require that petitioner be afforded a fair detention hearing.  See Labrador-Prato, 2025 WL 3458802, at *4 ("The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary.") (citing Zadvydas, 533 U.S. at 693); Tinoco, 2025 WL 3567862, at *5 (same).

receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a)[.]").  Moreover, regarding Petitioner's alternative request, the undersigned is not aware of, and Petitioner did not provide, any authority requiring DHS to bear the burden on an initial bond hearing determination under § 1226(a) where detention has not become prolonged of where there was no prior release that created a unique liberty interest against redetention.  See Rodriguez Diaz v. Garland, et al., 53 F.4th 1189, 1210-11 (9th Cir. 2022) (holding that § 1226(a), which places the burden of proof on the detainee at a bond hearing, to be constitutionally adequate).  Accordingly, the undersigned will recommend that Respondents be ordered to provide a bond and custody redetermination hearing within 7 days where Petitioner bears the burden of establishing that he is not a flight disk or a danger to the community.

However, the undersigned will make an additional recommendation that Respondents be enjoined from asserting, at a bond hearing or appeal of a bond hearing determination, that the immigration judge lacks the authority to hear Petitioner's request for bond pursuant to Matter of Yajure-Hurtado.  See Immigration Judge Orders at ECF No. 2-2 and 2-3 (denying Petitioner's requests for custody redetermination on jurisdictional grounds pursuant to Yajure Hurtado).  "Yajure Hurtado is no longer controlling; the legal conclusion underlying the decision is no longer tenable."  Maldonado Bautista, 2025 WL 3713982, at *3.  Respondents may not use it as a back door to deny petitioner effective relief.

**VI.    Respondents' Request for a Stay of Briefing**

As an alternative to denying the § 2241 petition, Respondents asks that any further briefing deadlines be held in abeyance until the resolution of Rodriguez, 779 F.Supp.3d 1239, 9th Cir. Docket No. 25-6842.  Respondents state that Rodriguez involves issues that are likely to be dispositive of the issues in this case.  ECF No. 6 at 3.  Because the legal issues are clear and these findings and recommendations resolve the habeas petition on its merits, no further briefing is necessary.  Respondents' request is denied.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    Petitioner's amended § 2241 petition (ECF No. 2) be GRANTED.

12

2.      Respondents be ordered to provide the Petitioner a bond hearing before an Immigration Judge within seven days of the adoption of the findings and recommendations.  At the hearing the Petitioner bears the burden of establishing that he is not a risk of flight or danger to the community.

3.      Respondents be ordered not to assert, at a bond hearing or appeal of the immigration judge's bond hearing determination, that the immigration judge lacks jurisdiction pursuant to Matter of Yajure-Hurtado.

4.      Respondents motion to dismiss (ECF No. 6) be DENIED.

5.      Judgement be entered in Petitioner's favor and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 16, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

13